UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| CYRUS R. WHITSON, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 2:24-CV-191-DCLC-CRW |
| ADRIANA SWALLOW, MICHAEL REITZ, WILLIE DUTY, RAYMOND FABER, JODIE FARMER, T. MILLER, OTT, and J. COOK | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

Plaintiff, a Tennessee Department of Correction prisoner, filed a pro se complaint for violation of 42 U.S.C. § 1983 arising out of (1) Defendant Dr. Faber's act of taking Plaintiff off a hormonal medication; (2) an assault on Plaintiff by another inmate; and (3) Plaintiff's loss of a kitchen job after the inmate assault [Doc. 2], to which Plaintiff attached various exhibits [Docs. 2-1–2-5]. Plaintiff also filed a motion for leave to proceed *in forma pauperis* [Doc. 4]. For the reasons set forth below, (1) Plaintiff's motion to proceed *in forma pauperis* [*Id.*] will be **GRANTED**; and (2) this action will be **DISMISSED without prejudice** because the complaint fails to state a claim upon which relief may be granted under § 1983.

I.  **FILING FEE**

As it appears from Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 4] that Plaintiff cannot pay the filing fee in one lump sum, this motion is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. 28 U.S.C. § 1914(a). The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743, as an initial partial payment,

whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in Plaintiff's inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C.§ 1915(b)(1)(A) and(B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee has been paid. 28 U.S.C. § 1915(b)(2). The Clerk is **DIRECTED** to send a copy of this order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's facility to ensure payment of the filing fee.

## II. COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, dismiss claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief

2

Case 2:24-cv-00191-DCLC-CRW    Document 5    Filed 01/17/25    Page 2 of 15    PageID #: 77

"above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. But courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived the plaintiff of a federal right. 42 U.S.C. § 1983.

**B.     Allegations[1]**

On May 14, 2024, Plaintiff saw Defendant Dr. Faber for heartburn, and Defendant Dr. Faber told Plaintiff that Plaintiff was fine and prescribed a medication for Plaintiff [Doc. 2 p. 5]. Then, on May 17, 2024, a nurse told Plaintiff that Defendant Dr. Faber discontinued a hormonal medication that treated Plaintiff's gender identity disorder because in April 2024, Plaintiff refused to go to the special needs facility[2] [*Id.*]. To support this claim, Plaintiff attached to the complaint, among other things, a response to a grievance about this incident [Doc. 2-2, p. 6]. In this response, a prison official indicated that Defendant Faber discontinued this hormonal medication because Plaintiff had refused to see a heart doctor at the special needs facility [*Id.* at 6]. And according to a hormone therapy consent document also attached to Plaintiff's complaint, which Plaintiff signed,

---

[1] Plaintiff's complaint [Doc. 2] and grievance documents attached thereto [Doc. 2-2, p. 4–5; Doc. 2-3, p. 3–4; Doc 2-4, p. 7–9; Doc. 2-5, p. 6–7] are dense and contain various allegations that are not relevant to Plaintiff's claims and/or are not directed toward any Defendant. Accordingly, the Court (1) only summarizes Plaintiff's arguably relevant factual allegations and (2) finds that any allegation not summarized or otherwise addressed fails to state a plausible claim for violation of § 1983 as to any named Defendant. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

[2] In a grievance attached to the complaint, Plaintiff alleges that Defendant Dr. Faber took Plaintiff off this hormonal medication due to incidents in January and February 2024 [Doc. 2-2, p. 4]. But as Plaintiff clearly states in the complaint that Defendant Dr. Faber took Plaintiff off this hormonal medication because Plaintiff refused to go to the special needs facility in April 2024, it is apparent that this is the relevant factual allegation underlying this claim for § 1983 relief.

3

the male to female hormone therapy to which Plaintiff consented caused an increased risk of heart disease, among other things [*Id.* at 7].

Plaintiff claims that the hormonal medication that Defendant Dr. Faber discontinued kept Plaintiff calm [Doc. 2, p. 5]. Thus, Plaintiff asserts that being off this medication caused Plaintiff to speak aggressively, which caused an inmate to assault Plaintiff in a manner that caused Plaintiff a number of injuries on August 8, 2024 [*Id.*].

It also appears that Plaintiff seeks to assert a claim that prison officials discriminated against Plaintiff for being transgender because an unspecified individual fired Plaintiff from a kitchen job after the assault, but the inmate who assaulted Plaintiff was allowed to continue to work in the kitchen [*Id.* at 9]. The Court liberally construes Plaintiff's complaint to rely on (1) a grievance that Plaintiff filed before the inmate assault and (2) a grievance that Plaintiff filed after the inmate assault to support this claim [Docs. 2-3, 2-4]. Accordingly, the Court will now summarize these grievances.

In the grievance that preceded the assault on Plaintiff, Plaintiff asserted, among other things, that on July 30, 2024, Defendant Reitz told Plaintiff that because (1) "meat was coming up missing" and (2) an incident had occurred regarding food in the chow hall on July 28, 2024, an inmate named Hartsook would be putting out Plaintiff's diet food, at which point Plaintiff told Defendant that inmate Hartsook could also cook the food, and Defendant Reitz got angry and sent Plaintiff back to Plaintiff's cell [Doc. 2-3, p. 2–3]. Plaintiff then claimed in this grievance that Defendant Reitz had targeted gay and transgender inmates, in support of which Plaintiff stated that (1) when a transgender inmate and another inmate were fighting, Defendant Reitz removed the non-transgender inmate from the kitchen; and (2) Defendant Reitz targeted transgender inmates because a "gangbanger" inmate had stated that he "[did not] want punks in the kitchen" [*Id.* at 3].

4

Additionally, in the grievance that Plaintiff filed after the inmate assaulted Plaintiff and Plaintiff lost the kitchen job, Plaintiff stated that Plaintiff told "Adriana Cunha" about the inmate coming to Plaintiff with a knife and Ms. Cunha told a sergeant about this incident, at which point the sergeant "shook down" the inmate but found nothing [Doc. 2-4, p. 8]. Plaintiff also claimed that "Mrs. Cunha" told another prison official that Plaintiff was fired from the kitchen job due to "job class"/program notes, rather than the inmate assault [*Id.* at 8–9]. But according to Plaintiff, other inmates working in the kitchen have more program notes and write ups than Plaintiff, and inmate Hartsook was allowed to work in the kitchen despite having a bloody nose problem [*Id.* at 9].

Plaintiff further states that Plaintiff told "Mrs. C" not to hire the inmate who attacked Plaintiff because the inmate would try to force Plaintiff to have sex with him, and "Mrs. C" told Plaintiff to let her know if anything sexual occurred [*Id.*]. Then, after the inmate requested oral sex from Plaintiff, Plaintiff "told everybody" [*Id.*]. The inmate attacked Plaintiff two days later [*Id.*].

In the same grievance, Plaintiff claims that program notes from Defendant Cook were due to Plaintiff not doing other people's jobs and/or leaving the job after completing the scheduled hours, which Plaintiff was allowed to do, and that "Mrs. C" knows Plaintiff is not doing the things in the program notes but "fears they'll cross her out also" [*Id.*]. Plaintiff also attached a grievance in which Plaintiff challenged job notes from Defendants "J. Cook," "Ott," and Reitz on various grounds [Doc. 4-5 p. 6–7]. In this grievance, Plaintiff (1) stated that he did not receive notice of the relevant notes prior to their entry in violation of policy; (2) challenged a program note from Defendant J. Cook by asserting that it arose from Plaintiff leaving work after Plaintiff had worked the scheduled hours and a different official told Plaintiff that Plaintiff could leave; (3) stated that

5

a contact note from Defendant Ott was "a good note" because Plaintiff had done the actions set forth therein but noted that this note does not have Plaintiff's name in the comment box; (4) pointed out that another note did not include a staff name; and (5) claimed that Plaintiff received a program note from Defendant Reitz due to certain food being on a food cart even though "everybody" knew Plaintiff did not load or push the cart, and Defendant Swallow and Officer Cingle knew who was pushing the cart [*Id.*]. Plaintiff attached copies of the relevant job notes to this grievance, and these copies contain handwritten notes (presumably from Plaintiff) regarding an incorrect spelling of Plaintiff's name on one note and the omission of Plaintiff's name and/or the name of the staff member on other notes [*Id.* at 12–17].

Plaintiff has sued Aramark Food Director Adriana Swallow,[3] Aramark Kitchen Manager Michael Reitz, Health Service Administrator Willie Duty, Doctor Raymond Faber, Supervisor Jodie Farmer, Correctional Officer T. Miller, Aramark Food Supervisor Ott, and Aramark Food Supervisor Cook [Doc. 2 p. 1, 2–3, 6]. As relief, Plaintiff requests the kitchen job back, monetary damages from each Defendant, and a policy change under which staff "will watch closer for transgender women in work places" [*Id.* at 7].

C. Analysis

1. Defendants Duty, Farmer, and T. Miller

Neither Plaintiff's complaint nor the documents attached thereto allow the Court to plausibly infer that Defendant Duty, Defendant Farmer, or Defendant Miller was personally

---

[3] Although unclear, it appears from (1) Plaintiff's identification of Defendant Swallow as the Aramark Food Services Director; (2) the fact that Defendant Swallow and the individual Plaintiff names as Adriana Cunha (to whom he also refers as "Mrs. C") in the complaint share the same first name; and (3) the fact that Plaintiff's job program notes include Adriana Cunha's name [Doc. 2-5 p. 12–17] that Defendant Officer Swallow and Adriana Cunha may be the same person, whom Plaintiff named in the complaint as Defendant Swallow. Accordingly, the Court treats the complaint allegations as to Defendant Swallow and Adriana Cunha as against Defendant Swallow.

involved in any incident underlying Plaintiff's complaint and the attached grievances, and these Defendants cannot be liable for the acts of others based on their supervisory positions. *Iqbal*, 556 U.S. at 676 (noting that "our precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"); *Frazier*, 41 F. App'x at 764. As such, the complaint documents fail to state a plausible claim for relief under § 1983 as to these Defendants, and they are **DISMISSED**.

### 2. Dr. Faber

Plaintiff's allegation that Defendant Dr. Faber discontinued a medication for Plaintiff also fails to state a plausible § 1983 claim based on deliberate indifference to a serious medical need and/or a failure to protect Plaintiff from other inmates. A jail official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.[4] *Estelle v. Gamble*, 429 U.S. 97 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* at 104–05. A medical provider violates a prisoner's Eighth Amendment right through actions that are "sufficiently harmful to evidence deliberate indifference to [the prisoner's] serious medical needs." *Id.* at 106. Deliberate indifference is equivalent to "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor is not liable under § 1983 unless he (1) knew that the inmate faced a substantial risk of serious harm and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847.

---

[4] As it is apparent from the Tennessee Department of Correction's felony offender database (https://foil.app.tn.gov/foil/search.jsp, last visited Jan. 15, 2025) that Plaintiff is a convicted prisoner, Plaintiff's claims fall under the Eighth Amendment, rather than the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Allegations that a prisoner did not receive the medical treatment he wanted or received a misdiagnosis or negligent medical care do not state a claim for violation of the Eighth Amendment. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (holding that "[a] patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983"); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997) (finding "misdiagnoses, negligence, and malpractice" are not "tantamount to deliberate indifference"). Thus, where a prisoner received medical care, the prisoner's disagreement with the adequacy of that care generally does not rise to the level of a constitutional violation. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1996) (noting that "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law"). But medical care that is "so woefully inadequate as to amount to no treatment at all" violates the Eighth Amendment. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001).

Also, it is well-settled that prison officials have a duty to take reasonable measures to protect prisoners' safety. *Farmer*, 511 U.S. at 832–33. Liability attaches to a prison official's failure to protect a prisoner where the prisoner was "incarcerated under conditions posing a substantial risk of serious harm," and the prison official acted with deliberate indifference to the prisoner's safety. *Id*. at 834. "Deliberate indifference" means that a prison official is liable only where he knows that the inmate faces a substantial risk of serious harm and disregards that risk. *Id*. at 837 (quotation marks omitted). A substantial risk of serious harm is one that is "'excessive'" and "not one that today's society chooses to tolerate." *Zakora v. Chrisman*, 44 F.4th 452, 469 (6th Cir. 2022) (citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993) and quoting and citing *Farmer*, 511 U.S. at 834).

Plaintiff does not provide any facts from which the Court can plausibly infer that Defendant Dr. Faber's discontinuation of Plaintiff's hormonal medication was due to this Defendant's deliberate indifference to (1) Plaintiff's medical needs or (2) any known substantial risk of serious harm to Plaintiff from another inmate. To the contrary, Plaintiff's complaint documents indicate that Defendant Dr. Faber discontinued the hormonal medication because it increased Plaintiff's risk of heart-related health issues, and Plaintiff had refused to see a heart doctor [Doc. 2 p. 5; Doc. 2-2 p. 6–7]. Nor does Plaintiff provide facts indicating that the medical care Plaintiff received from Defendant Dr. Faber was so inadequate that it rose to the level of a constitutional violation. Rather, Plaintiff's allegation that Defendant Dr. Faber discontinued the hormonal medication represents only Plaintiff's "disagreement with [] [a] physician[] over the proper course of treatment . . . which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372.

And while Plaintiff claims that the hormonal medication calmed Plaintiff, and that the discontinuation of it caused Plaintiff to be aggressive toward an inmate who later attacked Plaintiff, Plaintiff does not set forth any facts from which the Court can plausibly infer that any risk of harm to Plaintiff from other inmates due to the discontinuation of this medication was excessive or intolerable in today's society, especially in light of the complaint documents showing that Plaintiff had a risk of heart issues from the hormonal medication but had not seen a heart doctor. *Zakora*, 44 F.4th at 469 (citing *Helling*, 509 U.S. at 36, and *Farmer*, 511 U.S. at 834).

Accordingly, Plaintiff's complaint documents fail to state a plausible §1983 claim as to Defendant Dr. Faber, and this Defendant is **DISMISSED**.

### 3. Program Notes

As set forth above, Plaintiff's only allegations as to Defendants Ott and Cook involve these Defendants issuing Plaintiff program notes. Plaintiff alleges that Defendants Reitz also issued

9

Plaintiff a program note and Defendant Swallow did not contest notes others issued to Plaintiff. However, these allegations fail to state a claim upon which relief may be granted under § 1983.

First, Plaintiff does not have "[a] . . . constitutional right to prison employment or a particular prison job . . . ." *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003). Nor do any of Plaintiff's complaint documents suggest that Plaintiff's loss of the kitchen job or receipt of program notes was a sanction that "will inevitably affect the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," such that Plaintiff was entitled to due process regarding these incidents. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Moreover, Plaintiff's assertions that other inmates working in the kitchen have more program notes and/or write ups than Plaintiff, and that inmate Hartsook has a nosebleed issue, fail to allow the Court to plausibly infer that any Defendant violated Plaintiff's equal protection rights through the program notes. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

A plaintiff alleging a violation of his right to equal protection must be similarly situated to the comparative individuals in all relevant respects. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (providing that "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it'" (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998))).

First, even though Plaintiff appears to be a transgender female, rational basis review applies to Plaintiff's equal protection claim. *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 486 (6th Cir. 2023) (providing that "neither the Supreme Court nor [the Sixth Circuit] has recognized transgender status as a suspect class. Until that changes, rational basis review applies"), *cert. dismissed in part sub nom. Doe v. Kentucky*, 144 S. Ct. 389 (2023), and *cert. granted sub nom. United States v. Skrmetti*, 144 S. Ct. 2679 (2024). And Plaintiff does not set forth any facts to support a plausible inference that any Defendant's actions with regard to Plaintiff's program notes had no rational basis, or that any Defendant personally treated any other inmate who was similar to Plaintiff in all relevant respects differently with regard to program notes, such that Plaintiff's complaint documents could state a cognizable claim for violation of Plaintiff's right to equal protection against any Defendant. *Ctr. For Bio-Ethical Reform, Inc.*, 648 F.3d at 379.

Accordingly, all of Plaintiff's claims arising out of his program notes fail to state a plausible claim for violation of § 1983, and they are **DISMISSED**.

### 4. Defendant Swallow

Plaintiff's remaining allegation against Defendant Swallow is that this Defendant hired the inmate who assaulted Plaintiff even after Plaintiff told this Defendant that the inmate would try to

force Plaintiff to have sex with him. To the extent that Plaintiff claims that Defendant Swallow failed to protect Plaintiff from the inmate who assaulted Plaintiff based on this statement, Plaintiff has failed to set forth facts from which the Court can plausibly infer that this rose to the level of a constitutional violation. Specifically, there is always some level of risk that an individual working with other individuals will try to force an individual to engage in sexual activity. And Plaintiff has not set forth any facts from which the Court can plausibly infer that Plaintiff told Defendant Swallow of any facts from which Defendant Swallow knew that the risk that the relevant inmate would try to force Plaintiff to engage in sexual activity was so high that society would not tolerate it. *Zakora*, 44 F.4th at 469 (citing *Helling*, 509 U.S. at 36 and *Farmer*, 511 U.S. at 834).

Additionally, while Plaintiff claims in a grievance that Plaintiff "told everybody" that the relevant inmate to force Plaintiff to give the inmate oral sex two days before the inmate attacked Plaintiff, Plaintiff does not specify in the complaint or any grievance attached thereto that Defendant Swallow knew about this oral sex attempt incident prior to the attack on Plaintiff. And Plaintiff's conclusory allegation that Plaintiff "told everybody" about this occurrence does not allow the Court to plausibly infer that Defendant Swallow knew about the incident. *Scheid v. Fanny Farmer Candy*, 859 F.2d 434, 437 (6th Cir. 1988) (noting that "when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist" (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976))).

Accordingly, Plaintiff's complaint fails to state a plausible claim for violation of § 1983 against Defendant Swallow, and she is **DISMISSED**.

### A. Defendant Reitz

It also appears that Plaintiff seeks to hold Defendant Reitz liable for discrimination resulting from Plaintiff's loss of the kitchen job after the assault. And liberally construing the

complaint filings in Plaintiff's favor, Plaintiff claims that Defendant Reitz discriminated against Plaintiff because Plaintiff is transgender through certain employment actions.

Notably, however, Plaintiff does not allege or set forth facts indicating that Defendant Reitz was responsible for terminating Plaintiff's kitchen employment. As such, to the extent that Plaintiff seeks to hold Defendant Reitz liable for Plaintiff's loss of this employment, Plaintiff has failed to state a plausible § 1983 claim as to Defendant Reitz. *Frazier*, 41 F. App'x at 764.

But to the extent that Plaintiff seeks to hold Defendant Reitz liable for discrimination based on other allegations in the complaint and/or grievance documents, again, this equal protection claim is subject to rational basis review. *L. W. by & through Williams*, 83 F.4th at 486. As set forth above, in a grievance document filed with the complaint, Plaintiff asserts that, approximately a week prior to the inmate assaulting Plaintiff and Plaintiff losing the kitchen job, Defendant Reitz told Plaintiff that because (1) "meat was coming up missing" and (2) an incident regarding food in the chow hall had occurred on July 28, 2024, an inmate named Hartsook would be putting out Plaintiff's diet food, at which point Plaintiff told Defendant that inmate Hartsook could also cook the food, and Defendant Reitz got angry and sent Plaintiff back to Plaintiff's cell [Doc. 2-3 p. 2–3]. Plaintiff claims that this was discrimination against Plaintiff because Plaintiff is transgender, in support of which Plaintiff states that (1) after an altercation between a transgender inmate and another inmate, Defendant Reitz only removed the non-transgender inmate from the kitchen; and (2) Defendant Reitz targeted transgender females due to a statement from a "gangbanger" inmate that he "[did not] want punks in the kitchen" [*Id.* at 3].

But the fact that Defendant Reitz removed a non-transgender inmate from kitchen duties after that inmate had an altercation with a transgender inmate does not support Plaintiff's assertion that Defendant Reitz was targeting transgender inmates for removal from the kitchen. And

13

Plaintiff does not provide any facts to support the conclusory allegation that Defendant Reitz targeted transgender inmates based on another inmate's statement.

And most notably, Plaintiff does not set forth any facts to support a plausible inference that Defendant Reitz's actions with regard to Plaintiff's employment had no rational basis, or that Defendant Reitz personally treated any other inmate who was similar to Plaintiff in all relevant respects differently with regard to kitchen employment, such that Plaintiff's complaint documents could state a cognizable claim for violation of Plaintiff's right to equal protection against this Defendant. *Ctr. For Bio-Ethical Reform, Inc.*, 648 F.3d at 379. To the contrary, Plaintiff's grievance indicates that on July 30, Defendant Reitz told Plaintiff that Plaintiff would not be doing certain duties because meat had been missing and an incident had occurred regarding food two days prior [*Id.*]. While Plaintiff denies any involvement in the July 28 incident, Plaintiff does not provide any facts from which the Court can plausibly infer that Defendant Reitz knew that Plaintiff was not involved in that incident. And Plaintiff does not explain or address Defendant Reitz's statement that Plaintiff would not be doing Plaintiff's normal kitchen duties because meat had been missing.

Accordingly, Plaintiff's complaint fails to state a plausible § 1983 claim as to Defendant Reitz, and this Defendant is **DISMISSED**.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 4] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order and the accompanying judgment order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6. Accordingly, this action will be **DISMISSED without prejudice** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED. AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

s/Clifton L. Corker
United States District Judge

15

Case 2:24-cv-00191-DCLC-CRW    Document 5    Filed 01/17/25    Page 15 of 15
PageID #: 90